841 F.2d 1127
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Mary Jane WOMAC, Plaintiff-Appellant,
v.
ALLSTATE INSURANCE COMPANY, Defendant-Appellee.
 No. 87-5365.
 United States Court of Appeals, Sixth Circuit.
 March 8, 1988.
 
 Before BOYCE F. MARTIN, Jr., and ALAN E. NORRIS, Circuit Judges, and JOINER,* Senior District Judge.
 PER CURIAM.
 
 
 1
 Mary Jane Womac appeals an order granting summary judgment in favor of Allstate Insurance Company in this employment case.
 
 
 2
 In 1982, Womac was employed by Allstate as an insurance agent. Womac and Allstate entered into a three year employment contract that became effective on January 30, 1983. This agreement provided that:
 
 
 3
 Either you or Allstate have the right to terminate this agreement upon mailing to the other, at his or its last known address, written notice of termination. After such termination you agree not to act or represent yourself in any way as our agent. The Company will not terminate your employment because of unsatisfactory work unless you have been notified that your work is unsatisfactory and that your job is in jeopardy and unless you have been given a reasonable opportunity to bring your performance up to satisfactory standards.
 
 
 4
 * * *
 
 
 5
 * * *
 
 
 6
 The term "unsatisfactory work" relates to the quality of performance. Notification that your job is in jeopardy is not required in the event of termination of employment for a criminal act or an act of dishonesty, such as, by way of example but not limited to, the following: embezzlement, falsification of any Company or industry plan documents completed or approved by you in the performance of your duties, fraud or misrepresentation of material fact, or forgery.
 
 
 7
 In 1984, Hank Tiller became Womac's supervisor. Womac claims that Tiller repeatedly harassed her through sexually explicit conversation and overtures. Womac claims that she was also propositioned by Bob Stephens, another supervisor to whom she did not report. In December 1984 or January 1985, Womac contacted fellow agent Dwight Hixson about the harassment. Hixson suggested that Womac record the harassing conversation of her supervisors. By April 2, 1985, Tiller and Stephens had become aware of Hixson's advice to Womac. On that date, Tiller and Stephens confronted Hixson. Tiller pressured Hixson into telephoning Womac to make sure that she had no tapes of the supervisors.
 
 
 8
 In the meantime, a customer to whom Womac had sold insurance filed a claim that raised the suspicion of Chestine Daniel of Allstate's Knoxville claims department. In March 1985, Daniel reviewed the claim of Steven Moore, who was involved in a March 11, 1985 accident that totalled his car. Moore is the nephew of Womac's boyfriend. Before March 8, 1985, Moore carried no collision insurance on his car. Womac indicated to Allstate that she added the collision insurance to Moore's policy on March 8, 1985. Allstate's record, however, show that the new coverage was not added to Allstate's computer files until March 14, 1985. Daniel, who stated that she was unaware of Womac's claims of sexual harassment, alerted Tiller to the situation and suggested that the circumstances surrounding the claim raised the possibility of fraud.
 
 
 9
 Twice before, Tiller had been alerted to the possibility that an agent under his supervision had submitted a falsified application. As in these two prior cases, Tiller immediately contacted Michael Corridon, Territorial Sales Manager in Allstate's regional office. Corridon ordered Tiller to audit Womac's finances and applications. At this time, Tiller was still unaware that Womac had contacted Hixson about the sexual harassment.
 
 
 10
 The financial audit revealed no discrepancies. Allstate's standard application audit requires the agent's immediate supervisor to contact customers to verify information on the application. The supervisor forwards this information to the Territorial Sales Manager. These steps were followed. In turn, Corridon reviewed the information and forwarded it to Allstate's Corporate Security Department along with his recommendation that the Corporate Security Department conduct a separate investigation. Tiller played no role in the decision to request that Corporate Security become involved in the case.
 
 
 11
 On June 25, 1985, in the midst of the Corporate Security investigation, Womac was questioned by Amy Sears, an investigator in the Corporate Security Department. Sears, who had never met Womac or Tiller before that date, believes that Womac first learned of the investigation on that date. Womac made no mention of sexual harassment to Sears.
 
 
 12
 On July 8, 1985, Womac telephoned Corridon requesting to meet with him. Womac and Corridon met the next day. At the meeting, Womac sought information about the investigation of her applications. Womac also told Corridon that she was being sexually harassed by Tiller and Stephens. Womac also told Corridon that she believed Tiller was looking for an excuse to fire her. Specifically, Womac stated that she thought Tiller initiated the investigation of her applications after he learned that Womac had discussed the sexual harassment with Hixson. Womac was unaware that the investigation had been initiated by Daniel prior to the date that Tiller learned of Womac's conversation with Hixson.
 
 
 13
 In accordance with established Allstate procedure, Corridon immediately notified Patricia Bouldin, Allstate's Regional Human Resources Manager, of Womac's sexual harassment charges. Boulden investigated Womac's claim. She found no evidence that Tiller or Stephens had retaliated against Womac as a result of her bringing the alleged sexual harassment to the attention of others. Bouldin did, however, conclude that Tiller had made inappropriate, off-color comments on at least one occasion and that Tiller and Stephens acted improperly in questioning Hixson about his conversation with Womac. As a result of Boldin's finding, both Tiller and Stephens were placed on personal review and told that their jobs were in jeopardy. They were also informed that their employment would be terminated in the event they exercised similarly poor judgment in the future.
 
 
 14
 While Bouldin was investigating the sexual harassment claims, the Corporate Security Department was concluding its independent investigation of Womac's applications. Donald Bird, head of the Corporate Security Department's investigation of Womac, concluded that sufficient credible evidence existed to prove that Womac knowingly and deliberately falsified material information on five of the sixteen applications he reviewed. In addition, Bird concluded that there was convincing evidence that Womac falsified less important information on three other applications. In his report to C.M. Tomlinson, Jr., Allstate's Regional Vice President, Bird recommended that Womac be discharged. Tomlinson asked Corridon and Bouldin to review Bird's recommendation. Corridon and Bouldin concurred with Bird's recommendation, and Tomlinson ordered Womac's employment terminated.
 
 
 15
 On October 15, 1985, Corridon and Bouldin met with Womac. Bouldin informed Womac that no evidence was found to support her allegation that the investigation of her applications were, in anyway, connected with her claims of sexual harassment. Corridon went through a number of applications prepared by Womac and pointed out information that the Corporate Security Department concluded was falsified. Corridon informed Womac, that she was being terminated for falsifying information on applications. On October 30, 1985, Allstate forwarded a check to Womac, paying her through October 15, 1985 and compensating her for all vacation time due her.
 
 
 16
 Womac brought suit in state court, and Allstate removed the case to federal court on the basis of diversity of citizenship. Womac claimed that she was discharged becaue she reported the sexual harassment of her supervisors. Womac claimed that her termination breached her compensation agreement with Allstate, that she is entitled to relief for retaliatory discharge under Clanton v. Cain-Sloan Co., 677 S.W.2d 441 (Tenn.1984), and that she was not properly compensated for policies she wrote before she was terminated.
 
 
 17
 The district court entered summary judgment in favor of Allstate. The district court found that the breach of contract claim failed because Womac's termination for falsifying applications was authorized by the employment contract. The district court refused to create a new Tennessee cause of action for retaliatory discharge for reporting sexual harassment. The court's refusal was based on the absence of clear direction from the Tennessee legislature or the Tennessee courts and the existence of state and federal remedies for such retaliation under Tenn.Code Ann. Sec. 4-21-301 and 42 U.S.C. Sec. 2000e. The district court further found that Womac could not maintain a federal employment discrimination action because she had not complied with the procedural prerequisites of 42 U.S.C. Sec. 2000e-5. Finally, the district court held that Womac could not sue under Tenn.Code Ann. Sec. 4-21-301 because she failed to set out a prima facie case of retaliation. To the contrary, the district court found that the evidence before the court established that Allstate investigated and terminated Womac for independent and non-discriminatory purposes wholly unrelated to Womac's charges of sexual harassment.
 
 
 18
 Womac's contract with Allstate provides that she can be terminated immediately and without notification for an act of dishonesty or falsification of Allstate documents. Consequently, Allstate was clearly within its contractual rights in terminating Womac for the falsification of material information on five applications. The district court properly entered summary judgment for Allstate on Womac's breach of contract claim.
 
 
 19
 Womac argues that she has a cause of action for retaliatory discharge under Clanton v. Cain-Sloan Co., 677 S.W.2d 441 (Tenn.1984). In Clanton, the Tennessee Supreme Court recognized a nontatutory cause of action for retaliatory discharge for an employee-at-will who was fired for submitting a workers' compensation claim. Womac argues that this court should recognize a similar cause of action for employees-at-will fired for reporting sexual harassment. We need not, however, decide whether or not such a cause of action exists because the evidence before us overwhelmingly indicates that Womac was not fired in retaliation for reporting sexual harassment. To the contrary, the record indicates that the investigation of Womac was initiated by Daniel and Corridon before Tiller and Stephens or any other Allstate employee except Hixson learned of Womac's accusations of sexual harassment, and that neither Tiller nor Stephens were involved in the decision to terminate Womac. All the evidence before the court indicates that Womac was terminated for falsifying applications and that her allegations of sexual harassment played no role in the initiation, management, or conclusions of Corporate Security's investigation of Womac's applications. We are mindful of the problems of sexual harassment in the work place, and we agree with Womac and Bouldin that the alleged behavior of Tiller and Stephens was reprehensible. Nevertheless, Womac has produced no evidence to suggest that Allstate terminated her employment as a result of her reporting that she had been sexually harassed by Tiller and Stephens. Without such evidence, Womac cannot succeed under a nonstatutory retailatory discharge theory, even if we were to recognize such a theory.
 
 
 20
 The district court correctly concluded that a claim under 42 U.S.C. Sec. 2000e is precluded by Womac's failure to comply with the statute's procedural requirements.
 
 Tenn.Code Ann. Sec. 4-21-301 provides:
 
 21
 It shall be a discriminatory practice for a person or for two (2) or more persons:
 
 
 22
 (1) To retaliate or discriminate in any manner against a person because he or she has opposed a practice declared discriminatory by this chapter or because he or she has made a charge, filed a complaint, testified, assisted or participated in any manner in any investigation, proceeding, or hearing under this chapter;
 
 
 23
 As discussed above, Womac has introduced no evidence that she was fired in retaliation for reporting sexual harassment. Consequently, the district court properly ruled that she could not maintain an action under Tenn.Code Ann. Sec. 4-21-301. Regardless of the authority under which Womac pursues her retaliatory discharge claim, summary judgment in favor of Allstate was appropriate.
 
 
 24
 Womac claims that she is entitled to approximately $2,500 in sales commissions on insurance policies that had not been issued at the time she was terminated but were in the home office waiting to be processed. The compensation agreement between Allstate and Womac provides that she is entitled to compensation for "new policies recorded in your account during the previous month." "Recorded" is defined by the agreement was "entered in the appropriate accounts of the Company, as being received or receivable, with the speed ordinarily incident to our business operations." The agreement, therefore, does not entitle Womac to compensation for policies written but not processed at the time of her termination. Allstate is consequently entitled to summary judgment dismissing Womac's claim for additional compensation.
 
 
 25
 The judgment of the district court is affirmed.
 
 
 
 *
 Honorable Charles W. Joiner, Senior District Judge for the Eastern District of Michigan, sitting by designation